IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | No. 21-cr-038 |
| | : | No. 21-cr-043 |
| **LAWRENCE ROOKS** | : | |
| | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                                              **November 28, 2023**

Petitioner-Defendant Lawrence Rooks brings this Motion to Vacate, Set Aside or Correct a Sentence under 28 U.S.C. § 2255 arguing that 18 U.S.C. § 922(g)(1) is unconstitutional as it violates the Second Amendment of the United States Constitution. The Government filed a response in opposition. For the reasons set forth below, this Court will deny Mr. Rooks' Motion. Appropriate Orders will follow.

I.   **BACKGROUND**

Mr. Rooks was prosecuted in two cases that were consolidated for purposes of disposition and sentencing. In the first case, Mr. Rooks was charged with two criminal counts related to the distribution of heroin. *United States v. Rooks*, 2:21-cr-0038-CFK-1 ("*Rooks I*" or "Dkt. 1"). In the second case, Mr. Rooks was charged with five criminal counts related to the possession of a firearm. *United States v. Rooks*, 2:21-cr-0043-CFK-1 ("*Rooks II*" or "Dkt. 2"). Specifically, in *Rooks II*, Mr. Rooks was charged with two counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Counts I and II), and with three counts of false statements to a federal firearms licensee and aiding and abetting, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Counts III, IV, and V). *See* Dkt. 2, ECF No. 4.

1

On March 9, 2021, Mr. Rooks pled guilty to all counts in the two informations pursuant to a single written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). The written plea agreement provided for a stipulated sentence within the range of 92 to 115 months' imprisonment, four years of supervised release, and a $700 special assessment. Additionally, the written plea agreement contained an appellate waiver, which provided, *inter alia*, that "[i]f the Court accepts the recommendation of the parties . . . the defendant agrees that he voluntarily and expressly waives all rights to appeal or collaterally attack the conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law" and that "[a]s part of this knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes." *See* Guilty Plea Agreement ("GPA") ¶¶ 17, 19.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which, *inter alia*, detailed Mr. Rooks' lengthy criminal history. In 2001, at age 20, Mr. Rooks committed a theft by possession of a stolen car and was sentenced to probation. PSR ¶ 52. Two years later, in 2003, he was arrested for trafficking in cocaine and marijuana and was sentenced to five years' imprisonment in New Jersey state prison. PSR ¶ 53. In 2008, he illegally possessed a firearm and was sentenced to 11.5 to 23 months' incarceration. PSR ¶ 54. Upon his release in 2009, he engaged in a conspiracy to obtain a narcotic with a forged prescription and was sentenced to probation. PSR ¶ 55. In 2014, when he was 32 years old, Mr. Rooks participated in a gun-point robbery, for which he was sentenced to 11.5 to 23 months'

incarceration and five years' probation. PSR ¶ 56. In 2016, he once again was involved in obtaining narcotic medication through forged prescriptions and was sentenced to 8 to 16 months' incarceration. PSR ¶ 57. Mr. Rooks was on probation for the gun-point robbery at the time he committed the instant offenses. Due to this criminal history, Mr. Rooks was placed in the highest criminal history category, category VI. *See* PSR ¶¶ 52–58.

On July 15, 2021, this Court consolidated sentencing for the two informations, accepted the plea agreement, and sentenced Mr. Rooks at the low-end of the parties' agreed upon C-plea sentence, that is, to 92 months' incarceration, four years of supervised release, and a $700 special assessment.

On July 24, 2023, Mr. Rooks filed the present Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255, which is based upon *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023). Dkt 1, ECF No. 70; Dkt 2, ECF No. 30. On October 5, 2023, the Government filed a Response in Opposition. Dkt 1, ECF No. 77; Dkt 2, ECF No. 37. Accordingly, this matter is ripe for consideration.

## II. **LEGAL STANDARD**

Under 28 U.S.C. § 2255, "a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting 28 U.S.C. § 2255(a)) (internal quotation marks omitted). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citation omitted).

In evaluating requests for relief under Section 2255, courts "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (internal quotation marks and citation omitted). When the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," courts need not hold an evidentiary hearing. *Id.*

### III.   DISCUSSION

In his Motion, Mr. Rooks argues that his convictions in Counts One and Two under 18 U.S.C. § 922(g)(1) in *Rooks II*, Case No. 21-043 are unconstitutional and therefore those convictions must be dismissed. In response, the Government argues that Mr. Rooks' Motion is barred by his guilty plea agreement, is untimely, is procedurally defaulted, and is meritless.[1] Upon consideration of Mr. Rooks' Petition, the Government's response thereto, and the pleadings and documents of record, this Court concludes that no hearing is warranted because, as will be described below, the records of the case show conclusively that Mr. Rooks is not entitled to relief.

**A.  Waiver of Rights under the Plea Agreement**

Mr. Rooks' Section 2255 Motion is barred because he agreed to waive the right to file such a motion in his plea agreement. "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) (citations omitted). "Such waivers can include the waiver of the right to file a direct appeal and/or motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the government." *United States v. Mitchell*, No. CR 15-0021-6, 2017 WL 4838841, at *2 (E.D. Pa. Oct. 25, 2017) (citing *United States v. Mabry*, 536 F.3d 231, 236, 241

---

[1]   Because this Court finds that Mr. Rooks' Motion is barred by his guilty plea agreement and that his claim lacks merit, this Court declines to address the Government's arguments that Mr. Rooks' Motion is untimely or that it is procedurally defaulted.

(3d Cir. 2008)). "Waivers of appellate and collateral attack rights in criminal cases do not contravene public policy and courts should strictly construe such waivers." *Wiles v. United States*, No. 17-5077, 2020 WL 5055627, at *3 (D.N.J. Aug. 27, 2020) (internal quotation marks and citations omitted). "In deciding whether to enforce [a] waiver, the Court must (1) determine whether it was 'knowing and voluntary' and (2) decide whether enforcing it would 'work a miscarriage of justice.'" *United States v. Kastory*, No. 2:22-cr-142, 2023 WL 5901646, at *3 (W.D. Pa. Sept. 11, 2023) (citations omitted). "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *United States v. Traumann*, No. 18-cr-564, 2023 WL 2142660, at *2 (E.D. Pa. Feb. 21, 2023) (quoting *Mabry*, 536 F.3d at 237–38).

*1. Knowing and Voluntary Waiver*

Mr. Rooks has not presented any argument that would render his waiver unknowing or involuntary. Regardless, this Court has an independent obligation to conduct an evaluation of the validity of Mr. Rooks' waiver. In determining whether a petitioner's § 2255 waiver was knowing and voluntary, the court must "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." *Mabry*, 536 F.3d at 238. Here, the record shows that Mr. Rooks' waiver was knowing and voluntary.

First, the written plea agreement clearly provides that the waiver is broad and applies to both direct appeal and collateral attack rights. Specifically, Mr. Rooks agreed that "he voluntarily and expressly waives all rights to appeal or collaterally attack the conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises

under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." *See* GPA ¶ 17. The plea agreement further stated that Mr. Rooks "expressly waives the right to raise on appeal or on collateral review any arguments that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes." *Id.* The plea agreement did include a narrow exception allowing for the presentation of claims that an attorney who represented the defendant provided constitutionally ineffective assistance of counsel. *Id.* Mr. Rooks signed the plea agreement thereby acknowledging that he read the document, discussed it with his attorney, and accepted its terms. The Court finds the terms of the plea agreement to be sufficient and clear with regard to the waiver of collateral attack rights.

Second, the plea colloquy further establishes that Mr. Rooks knew and understood the terms of the plea agreement. Federal Rule of Criminal Procedure 11 requires that "[b]efore accepting a plea of guilty . . . the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). On March 9, 2021, a plea colloquy took place, during which time Mr. Rooks was placed under oath and the Court determined Mr. Rooks was competent to enter into a plea agreement.[2] Specifically, Mr. Rooks confirmed that he graduated from high school and that he could read, write, and understand the English language. He also confirmed that he understood the elements of the charges against him, the possible penalties, and the rights that he would be giving up by entering a guilty plea. Mr. Rooks confirmed that his attorney had discussed the terms of the plea agreement with him and that he was satisfied with his attorney. Most significant to the underlying Motion, Mr. Rooks confirmed that he

---

[2] The Court notes that the Honorable Mark A. Kearney conducted the plea colloquy. *See Rooks II*, Case No. 21-043, ECF No. 38.

understood that he was waiving, with limited exceptions, his right to appeal or collaterally attack his conviction and sentence. Mr. Rooks also confirmed that he was entering his guilty plea voluntarily, of his own free will.

In light of the record, this Court finds today, as was found at the time of the guilty plea, that not only was Mr. Rooks' plea freely and intelligently entered, but that Mr. Rooks' waiver was also knowingly and voluntarily made.

> 2. *No Miscarriage of Justice*

Holding Mr. Rooks to his knowing and voluntary waiver does not result in a miscarriage of justice. "The miscarriage of justice exception is meant to be 'applied sparingly and without undue generosity.'" *Traumann*, 2023 WL 2142660, at *3 (quoting *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005)). In assessing whether a miscarriage of justice will occur, a court should consider the "clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Traumann*, 2023 WL 2142660, at *3 (quoting *Khattak*, 273 F.3d at 563). In considering these factors, a court should "take a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced." *United States v. Williams*, No. 2:21-CV-01752, 2022 WL 973737, at *2 (W.D. Pa. Mar. 31, 2022) (internal quotation marks and citations omitted).

Enforcing the waiver will not work a miscarriage of justice here. The sentence imposed was not above the maximum permitted by law, nor was it based on an impermissible reason. There is no claim of ineffective assistance of counsel and no Government breach of the plea agreement. Moreover, as outlined below, even if Mr. Rooks' claims are examined on the merits, Mr. Rooks

fails to show that *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) applies to his case and impacts the validity of his conviction and sentence. Accordingly, Mr. Rooks' Motion remains subject to the collateral attack waiver and will be denied.

**B.  Mr. Rooks' § 2255 Claim Lacks Merit**

Notwithstanding this Court's holding that Mr. Rooks' appellate and collateral waivers are enforceable and bar review of his § 2255 claim, in the interest of judicial economy, this Court will briefly address the merits of Mr. Rooks' claim. Mr. Rooks argues that 18 U.S.C. § 922(g)(1) is unconstitutional as it violates the Second Amendment of the United States Constitution based on the recent Third Circuit decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc). The Court finds his argument lacks merit.

In *Range*, the en banc Third Circuit held that 18 U.S.C. § 922(g)(1), the felon-in-possession statute, was unconstitutional as applied to Bryan Range. 69 F.4th at 98. Mr. Range had pleaded guilty in 1995 to making a false statement to obtain food stamps in violation of Pennsylvania law—a crime classified as a misdemeanor punishable by up to five years' imprisonment. *Id.* The conviction precluded him from possessing a firearm under 18 U.S.C. § 922(g)(1). *Id.* Mr. Range seeking to possess a hunting rifle and shotgun for home defense, brought a civil action seeking a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him, and an injunction prohibiting the law's enforcement against him. *Id.* at 98–99.

Utilizing the history-based framework laid out by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Third Circuit explained that in deciding whether a firearm regulation is constitutional under the Second Amendment, courts must first determine "whether the text of the Second Amendment applies to a person and his proposed conduct" and, if it does, the Government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

8

*Range*, 69 F.4th at 101 (citing *Bruen*, 142 S. Ct. at 2127, 2134–35) (internal quotation marks omitted). Applying this framework, the Third Circuit found that 18 U.S.C. § 922(g)(1) as applied to Mr. Range was unconstitutional because the Government did not affirmatively prove that its firearms regulation is part of the historical tradition of firearm regulation. *Id.* at 106.

The Third Circuit emphasized their decision in *Range* was "narrow" and limited to the facts of that case, particularly the unique nature of Mr. Range's previous conviction. *Id.* The decision did not purport to vitiate § 922(g)(1) or limit Congress' ability to disarm those who "pose a threat to the orderly functioning of society." *Id.* at 110 (Ambro, J., concurring). As Judge Ambro explains in his concurrence, *Range* "speaks only to [Range's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like." *Id.* (Ambro, J., concurring).

Mr. Rooks, like Range, is one of "the people" protected by the Second Amendment despite his prior felony convictions. *Range*, 69 F.4th at 101. The Third Circuit held that "the people" in the Second Amendment refers to all Americans and not only law-abiding persons. *Id.* The Government does not dispute that under *Range*, Mr. Rooks is one of "the people" protected by the Second Amendment.

Having determined that Mr. Rooks is one of "the people," the next question is whether the Second Amendment applies to Mr. Rooks' conduct. *Id.* at 103. The Government argues that it does not apply to Mr. Rooks' conduct because Mr. Rooks did not maintain that he possessed a firearm for a lawful purpose, and the Second Amendment does not protect Mr. Rooks' possession of a firearm while serving a criminal sentence. The Court need not resolve whether Mr. Rooks' conduct is covered by the plain text of the Second Amendment, because, even if it is, the Government has met its burden to show that 18 U.S.C. § 922(g)(1) as applied to Mr. Rooks is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

9

"Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical twin.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133. The Supreme Court has explained that the question is, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

Importantly, the Supreme Court has repeatedly noted in their recent opinions interpreting the Second Amendment that their opinions do not cast doubt on certain presumptively lawful regulatory measures such as longstanding prohibitions on the possession of firearms by felons. For example, in *District of Columbia* v. *Heller*, the Court stated that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons" and such a prohibition is "presumptively lawful." 554 U.S. 570, 626–27, 627 n.26 (2008). Similarly, two concurring opinions in *Bruen* reaffirmed the Supreme Court's statements in *Heller* that felon dispossession statutes are longstanding and presumptively lawful. *See Bruen*, 142 S. Ct. 2157 (Alito, J., concurring) (noting that the decision does not "disturb[] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns"); *see also id.* at 2162 (Kavanaugh, J., concurring) (emphasizing that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons" (citation omitted)). Likewise, Judge Ambro's concurring opinion in *Range*, which was joined by Judges Greenaway and Montgomery-Reeves, indicated that while the Government failed to carry its burden in *Range* that did not mean 18 U.S.C. § 922(g)(1) was doomed, rather "[i]t remains presumptively lawful." *Range*, 69 F.4th at 109 (Ambro, J.,

10

concurring) (internal quotation marks and citations omitted). Judge Ambro explained that 18 U.S.C. § 922(g)(1):

> . . . fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society. That Range does not conceivably pose such a threat says nothing about those who do. And I join the majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.

*Id.* at 110 (Ambro, J., concurring).

In light of this guidance by the Supreme Court and Judge Ambro, considering the historical analogues cited in the Government's Opposition, the Court finds that 18 U.S.C. § 922(g)(1) is constitutional as applied to Mr. Rooks. Firearm regulation in the era of the Second Amendment's ratification disarmed individuals who posed a danger to others. *See Range*, 69 F.4th at 111–112 (Ambro, J., concurring); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (concluding "that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms [and] [w]hether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."). Here, Mr. Rooks is unquestionably not like Mr. Range. Mr. Rooks' past crimes, including theft/fraud, controlled substance crimes, and gun-point armed robbery, demonstrate that, if armed, he poses a danger to society. Therefore, the prohibition of firearm possession by Mr. Rooks passes constitutional muster as his case does not fit within the narrow facts applicable in Mr. Range's case.

In light of the preceding analysis, Mr. Rooks' underlying § 2255 claims have been knowingly and voluntarily waived and moreover, lack merit. Accordingly, Mr. Rooks' Motion to Vacate, Set Aside or Correct a Sentence will be denied.

## IV.     CERTIFICATE OF APPEALABILITY

"When a district court issues a final order denying a § 2255 motion, the court must also determine whether a certificate of appealability . . . should issue." *Kastory*, 2023 WL 5901646, at *6 (citation omitted). Based upon the Motion and files and records of this case, and for the reasons set forth herein, the Court finds that Mr. Rooks has not exhibited a substantial denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## V.     CONCLUSION

For the foregoing reasons, Mr. Rooks' Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255 will be denied and a certificate of appealability will not issue.  Appropriate Orders will follow.

**BY THE COURT:**

*/s/ Chad F. Kenney*

**CHAD F. KENNEY, JUDGE**